**ARCO INDUSTRIES CORP., Plaintiff,**

v.

**The TRAVELERS INS. CO.; the Travelers Indemnity Co.; Kemper Insurance Co.; (American Motorists Ins. Co.); Consolidated American Ins.; Commercial Union Assurance; (Commercial Union Ins. Co.); the Home Indemnity Co.; Argonaut–Midwest Ins. Co.; Indiana Ins. Co.; CNA Ins. Co.; (American Casualty Co. of Reading, Pa. and Continental Casualty Co.); and ABC Ins. Companies, Defendants.**

No. K–88–380 CA4.

United States District Court,
W.D. Michigan, S.D.

June 26, 1989.

On Motion for Relief from Judgment
Aug. 15, 1989.

James Brown, Lansing, Mich., for Arco Industries Corp.

Roberts, Betz & Bloss by David Bloss, Grand Rapids, Mich., for Home Indem. Co.

Dickinson, Wright, Moon, Vandusen & Freeman by John M. Lichtenberg, Lansing, Mich., for Travelers Ins. Co.

Miller, Canfield, Paddock & Stone by Michael B. Ortega, Kalamazoo, Mich., for Kemper Ins. Co.

Kitch, Saurbier, Drutchas, Wagner & Kenney by Stephen Kelley, Detroit, Mich., for Indiana Ins. Co.

Kitch, Saurbier, Drutchas, Wagner & Kenney by Stephen Kelley, Detroit, Mich., Thomas Hamilton, Katherine Dedrick, Ronald Ohren, Chicago, Ill., for Argonaut–Midwest Ins. Co.

Schureman, Frakes, Glass & Wulfmeier by Steven Hickey, Detroit, Mich., for Commercial Union Ins. Co.

Drinker, Biddle & Reath by Timothy Russell, Washington, D.C., for American Motorists.

Oosterbaan, York, Cooper & Peterson by John N. Cooper, II, Kalamazoo, Mich., for Consolidated American Ins. Co.

Straub, Seaman & Allen by Drew F. Seaman, St. Joseph, Mich., for CNA Ins. Co.

Drinker, Biddle & Reath by Michael Kubacki, Thomas Schaufelberger, Philadelphia, Pa., for American Motorists Ins. Co.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller by Thomas Hamilton, Katherine Dedrick, Ronald Ohren, Chicago, Ill., for Argonaut–Midwest.

Miller, Canfield, Paddock & Stone by Michael Ortega, Kalamazoo, Mich., for American Motorists Ins. Co.

## OPINION

ENSLEN, District Judge.

This matter is before the Court on each defendant's motion to dismiss or for summary judgment. For the reasons stated below, the Court will grant those motions. Because I find that oral argument is unnecessary to resolve the issues presented, plaintiff's motion to consolidate the motions for hearing is denied as moot.

### Facts

The plaintiff, Arco Industries Corporation ("Arco") manufactures automotive parts and uses trichloroethylene (TCE) in its manufacturing process. On two occasions in 1976, Arco contracted with Thomas Solvent Corporation to remove used TCE from Arco's facility at Schoolcraft, Michigan. It appears that the chemicals were ultimately stored at the Thermo Chem facility in Muskegon, Michigan. The United States Environmental Protection Agency ("EPA") has discovered a massive level of hazardous waste contamination at the Thermo Chem facility. Pursuant to its authority under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the EPA has begun the process of identifying those responsible for the pollution and of remedying it. On April 3, 1987, the EPA notified Arco that it had been identified as a potentially responsible party

**62**

for the Thermo Chem contamination. The letter, known as a "PRP letter," informed Arco of the extent of its potential liability under CERCLA, and requested that Arco participate in the EPA's remedial investigation and feasibility study. The EPA has also required Arco to provide it with extensive information concerning Arco's dealings with Thomas Solvent and Thermo Chem. No other action has been taken against Arco by the EPA.

Arco notified its insurers of the EPA's letter, and requested that they indemnify it for its costs in responding to the EPA's demands. Each insurer declined to provide Arco with a defense. On December 23, 1988, Arco filed this action seeking a declaratory judgment that the insurers are obligated to provide it with a defense in its dealings with the EPA, and that they are obligated to "indemnify" Arco for its costs and attorney fees incurred in responding to the EPA's request for information.

The pending motions raise three issues. First, two defendants argue that they have no liability to defend Arco because their policies lapsed before Arco made the shipments to Thermo Chem. Second, the insurers claim that Arco is collaterally estopped from re-litigating the duty to defend issues presented because a prior action in state court resolved a similar argument against Arco. Finally, the insurers argue that the PRP letter does not trigger their duty to defend because they are only obligated to defend Arco against "suits" and the PRP letter is not a suit.

*Standard*

█ In considering a motion for summary judgment, the narrow questions presented to this Court are whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ. Proc. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe Inc.*, 668 F.2d 905, 908 (6th

Cir.1982); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

█ The moving party has a right to summary judgment where that party is able to demonstrate, prior to trial, that the claims of the plaintiff have no factual basis. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court held in *Celotex*, "... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273. Moreover, the Court must read the allegations of the complaint in the light most favorable to the non-moving party. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983).

█ Where, as here, the moving defendants have supported their motion with affidavits and other documents, the plaintiff may not rest on the mere allegations or denials of the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e), *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir.1986).

█ The standard for granting a motion for summary judgment is essentially the same as that for granting a motion for a directed verdict. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is not entitled to summary judgment where there is sufficient evidence to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 246, 106 S.Ct. at 2508, 91 L.Ed.2d at 211–12. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 2556, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. With this stan-

dard in mind, the Court will review the arguments presented by the parties.

## Discussion

■ 1. *American Motorists Insurance Co. ("AMICO")*. AMICO contends that Arco has not alleged that any property damage occurred during the AMICO policy terms. Since AMICO's duty to defend is limited to property damage occurring during the policy periods, AMICO contends that it is entitled to summary judgment. Arco contends that AMICO must provide it with a defense because AMICO cannot prove that Arco did not ship TCE to the Thermo Chem site during the relevant period. Because I find that Arco, rather than AMICO, has the burden to establish an occurrence within the policy periods, and because Arco has not met that burden, I will grant AMICO's motion.

The EPA's letter did not identify any specific conduct by Arco that led to Arco's identification as a PRP. Arco has determined that it contracted with Thomas Solvent to remove hazardous wastes from Arco's Schoolcraft, Michigan plant on at least two occasions, March 26, 1976 and June 7, 1976. *See* Complaint ¶ 9, Exhibits A, B. Arco alleges that, as a result of these shipments, it must participate in the investigation and remediation of the released contaminants. The complaint also alleges that, "Arco understands Thomas Solvent then took waste products from its facility in Schoolcraft, Kalamazoo County, Michigan, to Thermo Chem for processing. Other shipments of waste products (in addition to those identified in Exhibit B ...) may have been picked up from Arco's ... facility and processed by Thermo Chem." Complaint, ¶ 20.

Arco's potential liability allegedly arises from these two 1976 shipments to the Thermo Chem facility. While the complaint alleges that other shipments may have occurred, Arco has produced no evidence indicating that other shipments occurred or that they occurred before 1976. The AMICO policies were in effect from January 1, 1968 to July 1, 1974. These policies provide coverage only for an "occurrence," which they define as "an accident ... which results, during the policy period, in bodily injury or property damage...." *See* Plaintiff's Exhibit C. Whether one defines an occurrence by the date of shipment, the date of damage to the environment, or the date the damage is discovered, it is obvious that an occurrence cannot happen before the earliest of these dates—the date Arco shipped its TCE to Thermo Chem. The only shipment dates identified by Arco are outside the AMICO policy periods. Arco has failed to provide any evidence that it shipped hazardous waste to the Thermo Chem site during the AMICO policy periods. Arco bears the burden of proof on this issue, and has not carried that burden. *American Home Assurance Co. v. Evans*, 589 F.Supp. 1276, 1287 (E.D. Mich.1984); *Strong v. Hercules Life Ins. Co.*, 284 Mich. 573, 578, 280 N.W. 55 (1938); *Lambert v. Jim Causley Pontiac Co.*, 47 Mich.App. 620, 621–22, 209 N.W.2d 619 (1973). Thus, AMICO is entitled to judgment in its favor as a matter of law.

As Arco argues, the duty to defend under Michigan law is broader than the duty to indemnify. *Detroit Edison Co. v. Michigan Mutual Insurance Co.*, 102 Mich. App. 136, 142, 301 N.W.2d 832 (1980); *Shepard Marine Construction Co. v. Maryland Casualty Co.*, 73 Mich.App. 62, 65, 250 N.W.2d 541 (1976). As I noted in *United States Fidelity and Guaranty Co. v. Thomas Solvent Co.*, 683 F.Supp. 1139, 1151 (W.D.Mich.1988), an "insurer's duty to defend attaches if the ... underlying complaints have advanced any theories of recovery which arguably fall within the coverage. On the other hand, if an insurer specifically excludes coverage with clear and unambiguous language, such express exclusions will relieve the insurer of the duty to defend." In this case, the AMICO policies unambiguously limit coverage to occurrences during the policy periods. AMICO is not obligated to provide a defense to where the alleged occurrences fall outside the policy periods. Since Arco has failed to produce any evidence of an occurrence during the AMICO policy periods, AMICO owes no duty to defend Arco. Its

motion for summary judgment is, therefore, granted.

2. *Travelers Insurance Company and Travelers Indemnity Company.* The same reasoning requires that Arco's action against the Travelers Insurance Company and Travelers Indemnity Company (collectively, "Travelers") must fail. Travelers allegedly issued insurance policies to Arco, or its predecessors, with coverage periods from March 1, 1967 to June 6, 1967 and August 31, 1967 to August 31, 1968.[1] These policies lapsed prior to any of the shipments Arco alleges will expose it to liability under CERCLA. The terms of these policies are allegedly similar to those of the AMICO policies. Since coverage is limited to occurrences during the policy period, and since Travelers' policies lapsed before Arco took any action which could subject it to liability under CERCLA, Travelers is entitled to judgment in its favor as a matter of law.

■ 3. *Collateral Estoppel.* The insurers argue that the doctrine of collateral estoppel, or issue preclusion, precludes relitigation of the duty to defend issue because that issue has already been decided by a state court in a previous lawsuit involving the same parties. On February 4, 1987, Arco filed suit against its insurers in the Circuit Court for Kalamazoo County, alleging that they owed it a defense against the Michigan Department of Natural Resource's ("DNR") charge that Arco had polluted the groundwater and soil near its Schoolcraft, Michigan plan. *Arco Industries Inc. v. Home Indemnity Co., et al.*, No. B87–0218–CK. That suit arose after the DNR sent Arco a PRP letter, similar to the letter at issue here, but before October 15, 1987, when the DNR filed suit against Arco in this Court. *Kelly v. Arco Industries Inc.*, K87–372–CA4. After the DNR filed suit, Arco amended its state court complaint, seeking a defense in the federal court action as well as indemnification should damages or equitable relief be awarded against it. The state action con-

tinued to seek reimbursement for costs incurred in Arco's investigation of and response to the DNR's initial claim. On January 4, 1988, the state court denied Arco's motion for an award of these pre-suit costs, holding that the DNR's notification letter was not the equivalent of a suit triggering the insurers' duty to defend. On September 23, 1988, the state court ruled that the insurers were obligated to defend Arco in the federal court action and to reimburse it for defense costs incurred after October 15, 1987. The insurers' motions for summary disposition on the duty to defend issue were denied without prejudice pending further discovery. The state court action has not reached a final judgment.

The insurers argue here that the state court held on January 4, 1988, that the DNR's notification letter did not constitute a "suit" within the meaning of their policies. They contend that relitigation of that issue is, therefore, barred by the doctrine of issue preclusion. Arco contends that issue preclusion is inapplicable to this case because the state court action involved different facts, and because there is no final judgment in that action.

■ The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give "preclusive effect to state court judgments whenever the courts of the State from which the judgment emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Hooks v. Hooks*, 771 F.2d 935, 947 (6th Cir.1983); *NLRB v. Master Slack Corp.*, 773 F.2d 77, 81–82 (6th Cir.1985). The preclusive effect of a state court judgment is determined according to state law. As a general rule, however, "nonfinal orders or judgments are not entitled to full faith and credit." *Hooks*, 771 F.2d at 948. *See also Gresham Park Community Organization v. Howell*, 652 F.2d 1227, 1243 (5th Cir. 1983). Michigan law also does not grant preclusive effect to rulings that are not final judgments. As the court stated in *Roberts v. City of Troy*, 170 Mich.App. 567,

---

1. Travelers has no record of having issued an insurance policy to Arco. In response to discovery requests in a related state court action, Arco produced partially illegible copies of portions of two insurance policies and an invoice for a third. Travelers' Exhibits 9–14.

577, 429 N.W.2d 206 (1988) (emphasis added):

> Collateral estoppel ... bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties based upon a different cause of action. In order to apply collateral estoppel, an issue of ultimate fact must have once been determined by a *valid and final judgment* in a previous litigation between the same parties.

In this case, the state court's ruling that the DNR's letter to Arco did not constitute a "suit" within the meaning of the insurance policies at issue is not a final judgment and is not, therefore, entitled to preclusive effect.[2] Michigan law would not preclude litigation of the issue until a final judgment was entered in the previous litigation, and would, in fact, allow the trial court to alter its ruling on this matter at any time prior to entry of final judgment. *See* MCR 2.604(B). I find, therefore, that relitigation of the duty to defend issue presented here is not barred by the state court's interlocutory order denying Arco's motion for pre-suit costs.

### 4. *The Duty to Defend*

■ Each of the insurance policies at issue here provides that the insurer "shall have the right and duty to defend any suit against the insured ... and may make such investigation and settlement of any claim or suit as it deems expedient ..." The question presented is whether the EPA's letter to Arco, notifying Arco that the EPA "has information that [Arco] may be a PRP," and of its "potential liability with respect to" the Thermo Chem facility is a "suit" within the meaning of the policies.

Arco argues that the PRP letter is the equivalent of a suit, since the letter requires Arco to provide information to the EPA for use in its remedial investigation and feasibility study. 42 U.S.C. § 9604(e). Failure to respond to the information request may result in substantial fines, *id.*, and submission of false information may result in criminal penalties. 18 U.S.C. § 1001. The PRP letter also requests Arco's participation in the EPA's remedial investigation and feasibility study, and informs Arco of its willingness to negotiate a response plan without resort to litigation. Arco's participation in the investigation is voluntary, apart from its obligation to respond to the information request. After completion of its remedial investigation and feasibility study, the EPA will determine the appropriate remedy for the contamination at the Thermo Chem facility. 42 U.S.C. § 9621. All persons liable under 42 U.S.C. § 9607(a) will be jointly and severally liable for the costs incurred in cleaning up that contamination. The EPA may file suit in federal district court to recover its clean up costs or to require responsible parties to participate in remedial efforts. 42 U.S.C. § 9606. Under certain circumstances, the EPA may issue its own orders directing responsible parties to act, and may file suit to enforce those orders. 42 U.S.C. § 9606(a). Responsible parties may challenge the EPA's choice of remedies in federal court, however, judicial review of the EPA's remedial decisions is limited to information contained in the administrative record compiled by the EPA during its investigation and planning efforts and a court may not reverse those decisions unless they are arbitrary and capricious. 42 U.S.C. § 9621.

The only action taken against Arco thus far appears to be the PRP letter and information request. Arco does not allege that the EPA has ordered it to participate in clean up efforts at the Thermo Chem site, or to pay for any costs incurred to date. Similarly, Arco does not allege that the

---

**2.** Michigan law would also refuse to apply res judicata, or claim preclusion, to the state court's ruling. Under Michigan law, "[t]he res judicata doctrine provides that, where two parties have fully litigated a particular claim and a final judgment has resulted, the claim may not be relitigated by either party." *VanDeventer v. Michigan National Bank,* 172 Mich.App. 456, 463, 432 N.W.2d 338 (1988). There are three prerequisites to the application of the doctrine: (1) there has been a prior decision on the merits; (2) the issues have been resolved in a prior action; and (3) both actions are between the same parties or their privies. *Id.* at 464, 432 N.W.2d 338.

EPA has initiated litigation against it to accomplish either of those results.

The insurers argue that their duty to defend is triggered only when a third party files a lawsuit against an insured. They argue that the word "suit" in the insuring clause must be interpreted, in accordance with its ordinary meaning, to refer to some sort of court proceeding. Because no formal litigation has commenced against Arco, the insurers argue that they have no duty to defend.

Under Michigan law, the language in an insurance policy must be given its ordinary and plain meaning, rather than a technical or strained construction. *Boyd v. General Motors Acceptance Corp.*, 162 Mich.App. 446, 452, 413 N.W.2d 683 (1987). Where ambiguities exist, they must be resolved in favor of the insured. *Usher v. St. Paul Fire & Marine Insurance Co.*, 126 Mich.App. 443, 447, 337 N.W.2d 351 (1983). "If the policy language is clear and unequivocal, however, its terms must be enforced; the courts will not rewrite the contract." *Id.* As the Michigan Supreme Court noted in *Raska v. Farm Bureau Mutual Insurance Co.*, 412 Mich. 355, 314 N.W.2d 440 (1982), a contract may be considered ambiguous when its terms may reasonably be understood in different ways:

> If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand that there is no coverage under the same circumstances, the contract is ambiguous and should be construed against its drafter and in favor of coverage.
>
> Yet, if a contract, however, inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

*Id.* at 362, 314 N.W.2d 440. Construction of an insurance contract containing unambiguous language is a question of law for the court. *Jones v. Farm Bureau Mutual Insurance*, 172 Mich.App. 24, 27, 431 N.W.2d 242 (1988); *Auto Club Insurance*

*Assoc. v. Page*, 162 Mich.App. 664, 667, 413 N.W.2d 472 (1987).

In some senses, the insurers' duty to defend is broader than their duty to indemnify. The limits of this duty were explained in *Detroit Edison Co. v. Michigan Mutual Insurance Co.*, 102 Mich.App. 136, 141–42, 301 N.W.2d 832 (1980):

> The duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured. This duty is not limited to meritorious suits and may even extend to actions which are groundless, false or fraudulent, so long as the allegations against the insured *even arguably* come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*See also Shepard Marine Construction Co. v. Maryland Casualty Co.*, 73 Mich. App. 62, 250 N.W.2d 541 (1976). Despite its breadth, however, the duty to defend remains constrained by the language of the insurance contract itself. *Stockdale v. Jamison*, 416 Mich. 217, 224, 330 N.W.2d 389 (1986) (duty to defend "arises solely from the language of the insurance contract"). Thus, unambiguous limitations placed upon the duty by the terms of an insurance contract must be enforced, just as other unambiguous terms are enforced.

In this case, the insurance contract limits the duty to defend to those instances where the insured is the subject of a "suit." While the contracts do not define the term "suit," that term has a well-accepted ordinary meaning. In plain language, the term refers to court proceedings. A majority of courts considering this issue have agreed.

See Aetna Casualty & Surety Co. v. Gulf Resources and Chemical Corp., 709 F.Supp. 958, 960 (D.Id.1989) ("suit" limited to civil litigation, not administrative claims or proceedings); Dextrex Chemical Industries v. Employers Insurance of Wausau, 681 F.Supp. 438, 443 (N.D.Ohio 1987); Harter Corp. v. Home Indemnity Co., 713 F.Supp. 231, 233 (W.D.Mich.1989) (word "suit" plainly means some type of court proceeding); City of Evart v. Home Ins. Co., No. 103621 slip op. at 2–3 (Mich.App. April 10, 1989) (word "suit" did not encompass notice letter from state administrative agency); Technicon Electronics Corp. v. American Home Assurance Co., 141 A.D.2d 124, 533 N.Y.S.2d 91 (2d Dept.1988), leave to appeal granted (Jan. 5, 1989). Each of these cases held that an insurer's duty to defend is not triggered by the mailing of a PRP letter by the EPA or by a state environmental agency.[3]

Certain courts have, however, favored Arco's position. In American Motorists Insurance Co. v. Levelor Lorentzen Inc., No. 88–1994 slip op. at n. 2, 1988 WL 112142 (D.N.J. Oct. 14, 1988), the court found that "Due to the scope of CERCLA, the EPA's letter of notification that Levelor was a potentially responsible party was sufficient to trigger the duty to defend, since the letter forced Levelor to take legal action to defend its interests." Similarly, in Fireman's Fund Insurance Co. v. Ex–Cell–O Corp., 662 F.Supp. 71 (E.D.Mich. 1987), Judge Feikens rejected the argument that the duty to defend arises only after the insured is the subject of civil litigation. "[C]overage does not hinge on the form of action taken or the nature of relief sought, but on an actual or threatened use of legal process to coerce payment or conduct by a policyholder.... Accordingly, I hold that a 'suit' includes any effort to impose on the policyholders a liability ultimately enforceable by a court...." Id. at 75.

Arco argues that United States Aviex Co. v. Travelers Insurance Co., 125 Mich. App. 579, 336 N.W.2d 838 (1983), also sup-

ports its position. In that case, the Michigan Department of Natural Resources ("DNR"), notified the insured that it would have to investigate and remedy toxic contamination caused by a fire on its premises. The letter indicated that the DNR would pursue legal action if the insured failed to comply. For two years, the insured engaged in remedial efforts, with the DNR periodically reminding it that failure to correct the contamination would result in "escalated enforcement action ... including a lawsuit for damages...." Id. at 584, 336 N.W.2d 838. Before the state filed suit, the insured sought a declaratory judgment that its insurer was obligated to defend and indemnify it. Id. The trial court found in favor of the insured.

On appeal, the insurer argued that the judgment was in error because no actual controversy existed between the parties. The court disagreed:

> In this case, the [insured] was faced with threats of legal action by the DNR. Although, as defendant argues, the DNR could seek legal redress in the form of an order for abatement of water pollution, a criminal complaint, or injunctive relief, and so possibly never seek a remedy covered by the insurance policy, [the insured] nevertheless needed to know whether defendant would be required to defend against a covered remedy should such a remedy be sought. Only with this knowledge could [the insured] choose between voluntarily complying with the DNR's very real and repeated demands and opposing the DNR's actions.

Id. at 586, 336 N.W.2d 838 (emphasis added).

The court also rejected the insurer's argument that its policy covered only sums of money paid as compensation for an injury, rather than sums expended in response to equitable or injunctive orders. The court noted that this issue had been "sharpened" in the interim between trial and appeal,

---

3. Similarly, Solo Cup Co. v. Federal Insurance Co., 619 F.2d 1178, 1188–89 (7th Cir.1980), held that the duty to defend did not arise where a federal agency determined, after investigation

that a government contractor had discriminated against its employees and proposed that the insured take remedial action to avoid litigation.

since the state had indeed filed suit against the insured seeking injunctive relief. *Id.* at 587, 336 N.W.2d 838.

The insurance policies at issue provided a defense for any "suit seeking damages," and obligated the insurer to pay any damages imposed by law against the insured. Since the measure of damages in actions for property damage is equal to the cost of repair, and the suit for injunctive relief sought to impose those same costs on the insured in the first instance, rather than upon the state, the court found that the insurer's duties to defend and indemnify applied to the suit for injunctive relief. "It is merely fortuitous from the standpoint of either [the insured] or [the insurer] that the state has chosen to have [the insured] remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing [the insured] to recover those costs." *Id.* at 590, 336 N.W.2d 838.

I agree with defendants that Arco reads *Aviex* too broadly. The *Aviex* court did not hold that the DNR's notification letter triggered the insurer's duty to defend. Rather, it held that a justiciable controversy existed, before the DNR filed suit, over whether the insurer would be obligated to defend and indemnify the insured if the DNR later filed suit. *Id.* at 586, 336 N.W.2d 838. As it happens, the DNR did file suit, and it sought injunctive relief rather than reimbursement for the cost of clean up. The remainder of the court's opinion is, thus, devoted to the issue of whether the cost of responding to an injunctive order would be covered by the insurer's obligation to defend and indemnify suits seeking damages. The court answered that question in the affirmative, finding no meaningful distinction between the two remedies.

Although I acknowledge that some disagreement exists on this issue, and although I agree with Arco that its most prudent course of action is to participate in the EPA's investigation and remedial study, I feel constrained to hold that the PRP letter issued to Arco is not a "suit" within the meaning of the insurance policies and that it did not trigger the insurers'

duty to defend Arco against the EPA. First, the weight of authority, including a decision from this district, favors the insurers' position. *See Harter Corp. v. Home Indemnity Co.*, 713 F.Supp. 231 (W.D. Mich.1989). Second, the only Michigan court to consider the precise issue presented here has agreed with the insurers' position, albeit in an unpublished opinion. *See City of Evart v. Home Ins. Co.*, No. 103621 (Mich.App. April 10, 1989). Third, the insurers' position most closely corresponds with the plain meaning of the "suit." That term is generally used to refer to formal legal proceedings, such as the initiation of civil litigation, and not to informal actions by administrative agencies. In short, I simply cannot find that the term is ambiguous in this context.

At this point, the EPA has only required Arco to furnish it with certain information. It has not required Arco to engage in any clean up efforts itself, or to pay any damages or fines for clean up costs incurred by the EPA. It has not filed a complaint against Arco, nor has it entered an administrative order against Arco pursuant to its authority under 42 U.S.C. § 9606(a). The EPA apparently has not yet determined the extent of Arco's liability nor has it decided upon a particular remedial plan. In short, nothing has occurred to date that resembles either a lawsuit or a formal administrative adjudication in any meaningful fashion. The insurers are not obligated to defend Arco until a "suit" has been filed against it. Since that event has not yet transpired, I find that the insurers are entitled to judgment as a matter of law.

I note that this opinion does not address whether the insurers would be obligated to indemnify Arco should the EPA initiate litigation against Arco for response costs at the Thermo Chem site. This opinion also does not address whether the insurers would be obligated to defend Arco in an action to enforce an administrative order or a suit to enter a consent decree, 42 U.S.C. § 9622, or whether they would be obligated to indemnify Arco for the costs associated with complying with such an order or decree. This opinion concerns only whether the insurers must defend Arco during this

early stage of the EPA's potential claim against it. Arco correctly points out that the insurers may be acting at their peril—if there is coverage and if Arco is held liable for its contribution to the Thermo Chem contamination, the insurers would be bound by the results of administrative proceedings in which they have expressly refused to participate. 42 U.S.C. § 9613(j).[4] It would seem to me that, under these circumstances, the insurers could not later be heard to complain that remedial plans approved by the EPA were too costly, or that Arco failed adequately to protect its own interests. That question, however, is not before me, because in this action Arco seeks only to be "indemnified" for its costs in responding to the EPA's initial letter and request for information. I answer that very limited question in the negative.

5. *Traveler's Motion of Sanctions under Rule 11.* Travelers requests that the Court impose sanctions upon the plaintiff and/or its counsel because Travelers believes that Arco's conduct in naming it as a defendant in this matter was objectively unreasonable. In support of this position, Travelers points out that Arco has never produced complete copies of any of the three Travelers policies that form the basis for this suit. In addition, Arco has never supplied Travelers, or this Court, with any evidence that it made shipments of hazardous waste to the Thermo Chem site during the Travelers policy periods. Finally, Travelers argues that the Thermo Chem site was not even in operation during the time it allegedly insured Arco. Travelers concludes that Arco initiated this action against it without reasonable inquiry into the facts or law.

 Federal Rule of Civil Procedure 11 imposes upon parties and counsel three obligations: (1) to conduct a reasonable inquiry to determine that their pleadings are well grounded in fact; (2) to determine that positions taken are warranted by existing law or a good faith argument for the extension or modification of existing law;

---

**4.** Arco also appears to argue that the policies are unenforceable because their limitation of the duty to defend to "suits," rather than administrative proceedings, violates a federal public policy discouraging CERCLA litigation. Arco contends that the authority granted the EPA under CERCLA announces a federal public policy mandating cooperation with the EPA and discouraging litigation. Because the insurers refuse to defend insureds in the early stages of EPA actions, they encourage insureds to litigate rather than cooperate with the EPA, thus violating public policy.

I am not certain that I agree with this argument. While the EPA has a great deal of authority under CERCLA, Congress failed to provide it with any sort of adjudicative powers. The EPA cannot require a potentially responsible party to participate in remedial efforts or to pay response costs unless it files suit in federal court. Potentially responsible parties have no legal duty to cooperate with the EPA, except to the extent that they must respond to requests for information and allow the EPA to enter their facilities for investigative purposes. In emergency situations, the EPA may issue administrative orders for clean up efforts. But even in these situations, the agency must turn to the federal courts for enforcement of these orders.

CERCLA is much more dependent upon litigation than are other federal statutory schemes. Although other environmental statutes give the EPA quasi-judicial powers, CERCLA does not require or empower the EPA to hold hearings, nor does it empower the EPA to enforce any remedial plan without resort to litigation. If Congress had intended to foreclose or limit CERCLA litigation, it could have given the EPA the same sorts of adjudicative powers it has delegated to the Veterans Administration, the Social Security Administration, or the National Labor Relations Board.

Thus, I would agree that the insurers' refusal to participate in EPA remedial investigations and feasibility studies encourages, rather than discourages, litigation under CERCLA. I would also agree that refusal to participate in this administrative process essentially allows the EPA a free-reign in dictating response methods since judicial review is limited to the administrative record. For the same reason, I would agree that the insurers' position is a risky one, since it may expose them to greater liability should coverage be found. Because Congress did not delegate adjudicative powers to the EPA, and because it has given the EPA no independent enforcement authority, however, I cannot agree that Congress intended to foreclose litigation under CERCLA, or that CERCLA creates a federal public policy discouraging such litigation. Thus, I cannot conclude that an insurance policy limiting the duty to defend to civil actions, rather than administrative claims, is unenforceable because it violates a public policy announced in CERCLA. *See Fresard v. Michigan Millers Mutual Ins. Co.,* 414 Mich. 686, 693–94, 327 N.W.2d 286 (1982) (terms in insurance policy are valid if they are "clear, unambiguous and not in contravention of public policy").

and (3) not to file pleadings for an improper purpose. The Court judges the party's or attorney's conduct by "an objective standard of reasonableness under the circumstances." *INVST Financial Group v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Violation of any of these obligations is grounds for sanction. *Id.* Once the Court determines that Rule 11 has been violated, it must impose a sanction. *Id.; Albright v. Upjohn Co.,* 788 F.2d 1217, 1222 (6th Cir. 1986). The rule, however, vests this Court with wide discretion in determining the appropriate remedy. *INVST,* 815 F.2d at 401; *Albright,* 788 F.3d at 1222. Because the primary goal of Rule 11 is to deter unreasonable conduct, the court "should impose the least severe sanction that is likely to deter." *Jackson v. The Law Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224, 1230 (6th Cir.1989). *See also Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir. 1988); *Stewart v. American International Oil & Gas,* 845 F.2d 196, 202 (9th Cir.1988). The Court must also make some inquiry regarding a sanctioned party's ability to pay a monetary sanction. *Jackson,* 875 F.2d at 1230.

■ I would agree with Travelers that Arco's conduct in filing this action against Travelers was objectively unreasonable. Although it has had the opportunity in this action, as well as in related state court suits, to produce evidence that Travelers issued a policy to Arco, or that the Travelers policies were in effect during any relevant period of time, Arco has chosen not to do so. At this point there is no objective factual basis for a belief that Travelers has a duty to defend Arco against the EPA. I can only conclude that Arco and its counsel failed to conduct a reasonable inquiry into the facts to determine whether the complaint against Arco was well grounded. Under these circumstances, I have no choice but to impose some sort of sanction under Rule 11.

■ Arco has chosen not to reply to Travelers' motion for sanctions. The Court thus has no information about the plaintiff's or its counsel's ability to pay a monetary sanction. It seems reasonable to conclude, however, that both would be able to pay a modest monetary sanction. After all, Arco and its counsel have had the monetary ability to file at least three civil actions in the last two years and this Court has no record of a request by Arco to proceed *in forma pauperis.* I also believe it is reasonable to conclude that both Arco and its counsel are responsible for the Rule 11 violation. Counsel was most assuredly aware that he had no evidence linking the Travelers policies to any relevant shipments of TCE, and Arco must be presumed to be aware of the contents of its business records and of the results of prior litigation on similar claims. I note, however, that this litigation came to a relatively speedy conclusion, and could have concluded even more promptly had defendants filed their motions more expeditiously. Under these circumstances, an award of all attorney fees or all costs incurred would be inappropriate. *See Jackson,* 875 F.2d at 1230 (opposing party has duty to mitigate damages from Rule 11 sanctions by seeking prompt disposition of frivolous litigation).

Accordingly, I have determined that a modest monetary sanction must be awarded against both Arco and its counsel. Plaintiff and plaintiff's counsel shall both pay to Travelers the sum of $500, for a total sanction of $1,000, within twenty (20) days of the date of this opinion and order. The Court would entertain a motion to decrease or alter the sanction imposed should either plaintiff or its counsel present proof of an inability to pay.

## ORDER

In accordance with the opinion entered June 26, 1989;

IT IS HEREBY ORDERED that all Defendants' Motions to Dismiss, for Judgment pursuant to F.R.Civ.P. 12(c), or for Summary Judgment are GRANTED;

IT IS FURTHER ORDERED that JUDGMENT is entered IN FAVOR of all DEFENDANTS and AGAINST PLAINTIFF;

IT IS FURTHER ORDERED that Plaintiff's Motion to Consolidate is DENIED, as moot;

IT IS FURTHER ORDERED that Defendants Travelers Insurance Company and Travelers Indemnity Company's Motion for Sanctions is GRANTED and that Plaintiff and Plaintiff's Counsel shall pay to Travelers the sum of $500, for a total sanction of $1000 within twenty (20) days of this order.

## ON MOTION FOR RELIEF FROM JUDGMENT

This matter is before the Court on plaintiff Arco Industries Corporation's ("Arco") Motion for Relief from Judgment. Arco makes four arguments in favor of its motion. First, it argues that *Upjohn v. New Hampshire Insurance Co.,* 178 Mich.App. 706, 444 N.W.2d 813 (1989), indicates that my opinion was in error. Second, Arco contends that the Court's opinion granting the defendant insurers' motions to dismiss and/or for summary judgment improperly reached the issue of whether coverage existed under one of the insurance policies at issue. Third, Arco contends that the Court erred in granting judgment on Arco's claims for indemnification, as opposed to its duty to defend claims, since the indemnification issue was not before the Court. Fourth, Arco contends that the Court's order assessing sanctions under F.R.Civ.P. 11 was in error. For the reasons stated below, the motion will be granted in part and denied in part.

### Facts

On May 1, 1989, the Court held a Rule 16 Status Conference in this matter. At that conference, Magistrate Rowland ordered the defendants to file dispositive motions addressing the issue of whether "an EPA PRP letter was sufficient to trigger the duty to defend on the part of the defendants...." Order, May 2, 1989. The defendants responded by filing their dispositive motions, each of which raised this threshhold issue. Briefs submitted by defendant Travellers Insurance Company ("Travellers") and American Motorists Insurance Company ("AMICO") also raised the issue of whether their policies, which they extended had lapsed before the alleged contamination occurred, provided

coverage even if a duty to defend existed. The Court decided that issue in favor of both defendants. The Court also granted summary judgment to each defendant, after concluding that the PRP letter was insufficient to trigger any insurer's duty to defend. Finally, the court granted defendant Traveller's motion for Rule 11 sanctions, after concluding that Arco's conduct in joining Travellers as a defendant in this action was objectively unreasonable.

### Standard

F.R.Civ.P. 60(b)(6) provides for the possibility of relief from judgment for any reason "justifying relief." Rule 60(b)(6), however, cannot be used as a substitute for appeal. Instead, it is used to cover unforeseen contingencies; it is intended as a means for accomplishing justice in exceptional situations. It is reserved for extraordinary circumstances. *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

### Discussion

1. *New Law.* Arco contends that the Michigan Court of Appeals' recent decision in *Upjohn Co. v. New Hampshire Insurance Co.,* 178 Mich.App. 706, 444 N.W.2d 813 (1989), indicates that my June 26, 1989 opinion was in error. The Court disagrees. *Upjohn* is entirely distinguishable from this case. In *Upjohn,* the insured voluntarily undertook to remedy groundwater and soil contamination at its factory in Puerto Rico. No suit or administrative action was initiated against it. The insured then sued its insurers to recover the clean up costs. The insurers presented five issues for decision: (1) whether the contamination was an "occurrence" within the meaning of their policies; (2) whether their pollution exclusions applied to preclude coverage; (3) whether property insurance was "other insurance" under one policy; (4) whether cleanup costs were recoverable as damages under the policies; and (5) whether the trial court erred in holding that certain insurers were not liable because the

occurrence took place before the effective date of their policies. Significantly, no insurance company raised the issue of whether a PRP letter triggers a duty to defend, presumably because there was no administrative action or litigation pending in which Upjohn needed a defense.

The *Upjohn* court did, however, hold that Upjohn's voluntary clean up costs were recoverable as damages under the insurance policies, since Upjohn could have been sued and required to pay those costs as damages. At 716, 444 N.W.2d 813. The court noted:

> [W]e agree with the trial court that governmental agencies could have ordered Upjohn to act and, had they done so, Upjohn would have been legally obligated to pay the cost of cleanup.... We note that the improper release of toxic wastes may cause property damage not only to the actual owner of the land, but also the government because of its independent interest, behind the titles of its citizens, in all the air and earth (i.e., its natural resources) within its domain. We believe that it makes no difference that Upjohn took the remedial action it did before being ordered to do so, and, in fact, we believe that such swift remedial action should be encouraged, rather than discouraged.

*Id.*

Arco correctly notes that this passage indicates that Michigan law encourages insureds to take remedial action prior to suit by allowing for indemnification of the cleanup costs incurred, a position I sympathized with in my opinion of June 26, 1989. The *Upjohn* court never considered the issue raised in this litigation, however, and its encouragement of voluntary remedial measures thus does not indicate that my prior ruling is in error. The pleadings in this case do not raise the issue of whether these insurers will be required to indemnify Arco for cleanup costs, nor was that issue decided on June 26. *Upjohn* provides no support for Arco's position.

2. *Coverage.* The Court granted defendants AMICO and Travellers' motions for summary judgment on the ground that these insurers' policies had lapsed before any occurrence could have taken place. Arco challenges that result with regard to Travellers, but not with regard to AMICO, presumably because AMICO's motion was filed before the May 2, 1989 order. Arco argues that the May 2, 1989 order limited the issues that could be raised in the defendants' motions to the duty to defend issue. Since Travellers' motion went beyond that issue, and addressed the issue of coverage, Arco contends that the motion violated the May 2, 1989 order and that I should vacate this portion of my opinion.

First, I disagree with Arco that the May 2, 1989 order intended to foreclose discussion of issues other than the duty to defend. The order states, in pertinent part, "[T]he threshold issue of whether an EPA PRP letter was sufficient to trigger the duty to defend ... should be decided before an Order Scheduling Events [is] entered. Therefore, defendants shall file their dispositive motions raising that issue on or before May 15, 1989." As I read this order, it requires defendants to file dispositive motions raising the duty to defend issue before May 15, 1989. Nowhere does the order foreclose consideration of other issues. It does not state that the defendants shall file dispositive motions raising only that issue, nor does the order relieve plaintiff of the burden of responding to other issues raised. In short, I disagree with Arco that the May 2, 1989 order limited this Court's inquiry to the duty to defend issue.

Second, even if I were to read the order as Arco does, Arco provides the Court with no basis for altering the prior judgment. I based my decision upon the fact, as alleged in Arco's complaint, that Arco's potential liability for the Thermo Chem contamination is based on 1976 shipments to that facility. Since the alleged Travellers' policies lapsed by 1967, the Travellers policies could not possibly cover this contamination. While Arco points out that the EPA's request for information covered the years 1967 to 1980, a matter not raised in its initial response, Arco has failed to identify a single shipment that occurred during the

Travellers' policy period. In fact, Arco does not argue, let alone document, that any shipment occurred during the Travellers' policy period. Thus, my initial ruling remains sound.

3. *Duty to Indemnify.* As Arco points out, the duty to defend an insured against suit is distinct from the duty to indemnify an insured for damages or other costs incurred as a result of an unfavorable judgment in a suit. The duty to defend is, of course, broader than the duty to indemnify. See Opinion, June 26, 1989 at 63–64. Arco contends that this Court erred in granting judgment on all its claims because that judgment will bar Arco from raising a duty to indemnify claim at a later date.

In my opinion of June 26, 1989, I specifically noted that I was *not* deciding the issue of whether these insurers would be called upon to indemnify Arco should its CERCLA liability at some point be established:

> I note that this opinion does not address whether the insurers would be obligated to indemnify Arco should the EPA initiate litigation against Arco for response costs at the Thermo Chem site. This opinion also does not address whether the insurers would be obligated to defend Arco in an action to enforce an administrative order or a suit to enter a consent decree, 42 U.S.C. § 9622, or whether they would be obligated to indemnify Arco for the costs associated with complying with such an order or decree ... That question, however, is not before me, because in this action Arco seeks only to be "indemnified" for its costs in responding to the EPA's initial letter and request for information. I answer that very limited question in the negative.

Opinion, June 26, 1989 at 68–69. Arco now contends that, by granting judgment on its entire claim against the insurers, I may have barred it from seeking indemnification for response costs at a later date. I disagree. First, Arco's complaint does not raise a claim for indemnification for response costs. The complaint uses the word "indemnify" on several occasions, but quite explicitly seeks indemnification for "costs and expenses arising from the EPA allegations and demands." Complaint ¶ 33A. I simply do not see how a reasonable person could read Arco's complaint to seek indemnification for response costs Arco has not yet been ordered, or even requested, to pay. Nor was it my intent to foreclose Arco from asserting such a claim.

■ I understand, however, the intricacies of Michigan's *res judicata* rules, and the fact that a later interpretation of my June 26, 1989 opinion may be inconsistent with its intent. Thus, out of an overabundance of caution, the Court will once again clarify the limits of its ruling in this case. I found on June 26, 1989 and again today, that these insurers owe no duty to defend Arco against the EPA's PRP letter and request for information. Since they owe no duty to defend, the insurers need not reimburse or indemnify Arco for its costs in responding to that letter and request for information. I express no opinion upon whether, at some point in the future, these insurers will have a duty to defend Arco or a duty to indemnify it for costs associated with the contamination at the Thermo Chem site. Those claims are not raised in the instant complaint and even if they were raised, would not be ripe for judicial review. To the extent that my June 26, 1989 opinion may be read to foreclose future claims for indemnification, the opinion and order are modified to dismiss such claims without prejudice.

4. *Motion for Sanctions.* Arco contends that its conduct in joining Travellers as a defendant was objectively reasonable since the EPA sought information regarding Arco shipments to the Thermo Chem site during the period of 1967–1980, when the Travellers policies were in effect. As I noted above, however, Arco has never even claimed that it made a shipment during the Travellers policy period. The record in this case indicates that Arco has responded to the EPA's request for information. In conducting the investigation necessary to file that response, Arco presumably would have uncovered whatever evidence there was that a shipment occurred during the Travellers policy periods. To date, however, it has failed to indicate any factual

basis for its allegation that such a shipment occurred. Accordingly, I continue to believe that Arco's conduct in naming Travellers was objectively unreasonable, and I will decline to modify my opinion on the motion for sanctions.

ORDER

In accordance with the opinion entered this 15 day of August, 1989;

IT IS HEREBY ORDERED that Plaintiff's Motion for Relief from Judgment is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that this Court's Judgment dated June 26, 1989 is MODIFIED as follows: JUDGMENT is entered IN FAVOR of all DEFENDANTS and AGAINST PLAINTIFF. To the extent that the plaintiff's complaint may be read to assert a claim for indemnification for response or cleanup costs associated with the Thermo Chem facility, that claim is DISMISSED without prejudice.