AETNA CASUALTY & SURETY
CO., Plaintiff,

v.

**DOW CHEMICAL CO., Defendant.**

No. 93–73601.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 1998.

Charles Browning, Detroit, MI, for Plaintiff.

Michael P. Foradas, Stephen P. Jeffirs, Kirkland & Ellis, Chicago, IL, for Defendant.

## OPINION AND ORDER DENYING THE LONDON INSURERS' MOTION FOR SUMMARY JUDGMENT AS TO THE PPI/BROOKLAWN SITE BASED ON THE NMA 1685 POLLUTION EXCLUSION TOGETHER WITH THE JOINDERS THERETO; DENYING AS MOOT EMPLOYERS INSURANCE OF WAUSAU'S MOTION FOR SUMMARY JUDGMENT AS TO THE HARTLEY & HARTLEY AND SILRESIM SITES BASED ON THE NMA 1685 POLLUTION EXCLUSION; AND DENYING THE LONDON INSURERS' MOTION TO STRIKE THE AFFIDAVIT OF ROBERT HUGHES TOGETHER WITH THE JOINDERS THERETO

EDMUNDS, District Judge.

This matter came before the Court at a hearing on September 14, 1998, on the London Insurers'[1] motion for summary judgment based upon the NMA 1685 pollution exclusion clause with respect to the PPI/Brooklawn site. The following insurers joined the London Insurers' motion: American Home Assurance Company, Yasuda Fire and Marine Insurance Company of Europe Limited, National Nederlanden, and International Insurance.[2]

In its April 10, 1998 Opinion interpreting the ISO pollution exclusion clause, this Court held that there was a question of fact whether some of the property damage at the PPI/Brooklawn site arose from a "sudden and accidental" break in a levee in 1970. The London Insurers argue that they are entitled to summary judgment under the NMA 1685 pollution exclusion clause set forth in their post–1970 policies because the levee break was before the policy period.

---

1. The "London Insurers" are more specifically defined in footnote 1 of their brief.

2. Dow's Response, footnote 1. Employers Insurance of Wausau filed a similar motion for summary judgment on the NMA 1685 pollution exclusion clause with respect to the Hartley & Hartley and Silresim sites. Subsequently, on September 14, 1998, Wausau and Dow filed a stipulation indicating that Dow dismissed its claims against Wausau with respect to those sites. Accordingly, Wausau's motion for summary judgment on the NMA 1685 pollution exclusion clause with respect to the Hartley & Hartley and Silresim sites is denied as moot.

Dow argues that the NMA 1685 form pollution exclusion should be interpreted identically to the ISO form pollution exclusion clause. Accordingly, Dow argues, the Court has already held in its April 10 Opinion that there is an issue of fact regarding the application of the exclusion at the PPI/Brooklawn site.

Dow relies in part on the affidavit of Robert Hughes, an insurance industry expert. The affidavit presents extrinsic evidence of custom and usage. The Insurers have moved to strike the affidavit, arguing that the policy language is clear and unambiguous and thus extrinsic evidence is not admissible.

For the reasons set forth below, the Court DENIES the Insurers' motion to strike the affidavit because the policy language is ambiguous and thus the Court may look to extrinsic evidence to determine the parties intent. Further, the Court interprets the NMA 1685 pollution exclusion as having the same meaning as the ISO pollution exclusion. Thus, the Insurers' motion for summary judgment on the NMA 1685 pollution exclusion is DENIED with respect to the PPI/Brooklawn site.

## I. Facts

The NMA 1685 pollution exclusion clause set forth in the London policies from March 11, 1971 through June 11, 1972 provides:

This insurance does not cover any liability for:

(1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination resulting from the discharge, dispersal or release, or escape of any substance into or upon any watercourse or body of water.

(2) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination other than described in Paragraph (1) above, provided always that *this Paragraph (2) shall not apply to liability for Personal Injury or Bodily Injury or loss of or physical damage to or destruction of tangible property, or loss of use of such property damaged or destroyed where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of this Insurance.*

(Emphasis added).[3] The London Policies from June 11, 1978 through December 1, 1985 contain a pollution exclusion clause identical to paragraph 2 above; they do not include paragraph 1.[4] The underlined portion is the exception to the pollution exclusion. "NMA" is the acronym for Lloyd's Non-Marine Association, the Lloyd's group which drafts standard form insurance policies.

■■ The ISO form pollution exclusion, interpreted in this Court's April 10, 1998 Opinion,[5] provides:

It is agreed that the insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, re-

---

**3.** The London policies that contain this language are Policy Nos. CU10086, CU 10087, CU 10088, K19755/6, K24288, and CX4041.

**4.** The London policies that include this language are Policy Nos. UKL0732, UKL0733, UKL0734, UKL0735, ULL0687, PY106879, PY156880, PY106880, PY160980, and KY059783.

**5.** The April Opinion explained Michigan law as set forth in *South Macomb Disposal Authority v. American Ins. Co.,* 225 Mich.App. 635, 572 N.W.2d 686 (1997), as follows:

In *South Macomb,* the court clarified that when determining whether the sudden and accidental exception applies to discharges or releases at a landfill designed to contain contaminants placed in that landfill, the court: (1) focuses on the discharge or release of contaminants from the landfill into the environment and not on the mere disposal of wastes at the landfill; (2) may separate out isolated, identifiable discharges from an overall pattern of discharge; (3) examines whether there is evidence supporting the insured's claim that these separate, isolated, identifiable discharges were "sudden and accidental" as those terms have been defined by the Michigan Supreme Court. Opinion and Order, 4/10/98 p. 9. The April Opinion further explained the meaning of the term "sudden and accidental." A "sudden" discharge is one that was immediate and unexpected. An "accidental" discharge is one that was unexpected and unintended, "by chance and out of the ordinary course of things." *Id.* at 13 (citing *South Macomb.*). Whether the insured expected the discrete discharge is evaluated using an objective standard, i.e. if the insured should have expected the discharge, the discharge was not accidental and coverage is barred. *Id.*

lease or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

"ISO" stands for the Insurance Services Office, the industry trade group that drafts form policies used in the American liability insurance market.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

### A. Burden of Proof

▮ The insurer bears the burden of proving that an exclusion clause applies. *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 850 F.Supp. 1342, 1345 (W.D.Mich.1993); *Morrill v. Gallagher*, 370 Mich. 578, 587, 122 N.W.2d

687, 691 (1963). However, the insured bears the burden of proving the exception to the pollution exclusion clause. *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1020 (6th Cir.1995).

### B. General Rules of Contract Interpretation

▮ The rules of construction for insurance contracts are the same as those for any other written contract. *Comerica Bank v. Lexington Ins. Co.*, 3 F.3d 939, 942 (6th Cir.1993). The question of whether a contract is ambiguous is a question of law for the court. *Steinmetz Elec. Contractors v. Local Union No. 58*, 517 F.Supp. 428, 432 (E.D.Mich.1981); *Mayer v. Auto–Owners Ins. Co.*, 127 Mich.App. 23, 27, 338 N.W.2d 407, 409 (1983). Further, construction of a contract, whether it is ambiguous or unambiguous, is a question of law for the court. *Petovello v. Murray*, 139 Mich.App. 639, 642, 362 N.W.2d 857, 858 (1984); *Fragner v. American Community Mut. Ins. Co.*, 199 Mich.App. 537, 540, 502 N.W.2d 350, 352 (1993). The function of the court is to determine and give effect to the parties' intent as discerned from the policy's language, looking at the policy as a whole. *Auto–Owners v. Churchman*, 440 Mich. 560, 566, 489 N.W.2d 431, 434 (1992).

▮ A contract which admits of but one interpretation is unambiguous. *Fragner*, 199 Mich.App. at 540, 502 N.W.2d at 352. In contrast, a contract provision is ambiguous if it is capable of two or more constructions, both of which are reasonable. *Petovello*, 139 Mich.App. at 642, 362 N.W.2d at 858.

▮ If a contract is clear and unambiguous, the court must enforce the contract as written, according to its plain meaning, *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654, 505 N.W.2d 553, 557 (1993), without looking to extrinsic evidence. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 205 n. 6, 476 N.W.2d 392, 396 n. 6 (1991). It is improper for the court to ignore the plain meaning of the policy's language in favor of a technical or strained construction. *Arco Indus. Corp. v. Travelers Ins. Co.*, 730 F.Supp. 59, 66 (W.D.Mich.1989).

If the contract is ambiguous, the court must determine the intent of the parties. To do so, the court may look to extrinsic evidence such as custom and usage. *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 197 Mich.App. 482, 494–95, 496 N.W.2d 373, 379 (1992), *aff'd*, 445 Mich. 558, 519 N.W.2d 864 (1994). "Perhaps the most common of extrinsic aids to the construction of an insurance policy or other contract is usage and custom." *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 712–13, 443 N.W.2d 734, 760 (1989) (Boyle, J.).

In addition, certain rules of construction apply. Ambiguous terms in an insurance policy are construed in favor of the insured. *Arco Indus. Corp. v. Am. Motorists Ins.*, 448 Mich. 395, 402–03, 531 N.W.2d 168, 172 (1995). Moreover, it is the insurer's responsibility to clearly express limits on coverage. *Auto Club Ins. Ass'n v. DeLaGarza*, 433 Mich. 208, 214, 444 N.W.2d 803, 806 (1989). Thus, insurance exclusion clauses are construed strictly and narrowly. *Auto–Owners v. Churchman*, 440 Mich. at 567, 489 N.W.2d at 435; *Farm Bureau Mut. Ins. Co. v. Stark*, 437 Mich. 175, 181, 468 N.W.2d 498, 501 (1991).

The Insurers contend that the NMA 1685 language is clear: the sudden and accidental happening must have occurred *during the policy period* in order for the exception to apply. Because the language is unambiguous, the Insurers contend that extrinsic evidence such as the affidavit of Robert Hughes is irrelevant and thus the Court should strike the Hughes affidavit.

While some courts have held that the NMA 1685 pollution exclusion clause is unambiguous, *see e.g., Syntex Corp. v. Lowsley–Williams & Cos.*, 67 Cal.Rptr.4th 871, 79 Cal.Rptr.2d 371 (1998), this Court believes that this position is disingenuous. The policy language does not indicate exactly what must have happened during the policy period in order for the exception to apply. The phrase "sudden and unexpected happening during the policy period" could be interpreted to mean many things. It could mean, for example, the initial release of the contaminant, the initial release into a landfill, the subsequent release from a landfill into the environment, or the ultimate damage resulting from the release. Because the clause is subject to more than one reasonable interpretation, the Court finds that it is ambiguous.[6]

## C. Interpretation of the NMA 1685 Pollution Exclusion Clause

The general rules of contract construction dictate that the Court interpret the NMA pollution exclusion clause like the ISO clause, and not more narrowly as advocated by the Insurers. The NMA clause is ambiguous and must be interpreted in favor of the insured. In addition, it is an exception to coverage which must be strictly and narrowly construed.

Very few courts have addressed the portion of the NMA 1685 pollution exclusion clause which states "happening during the policy period." In *Syntex Corp. v. Lowsley–Williams & Cos.*, 67 Cal.App.4th 871, 79 Cal. Rptr.2d 371 (1998), the court held that the phrase "sudden, unintended, and unexpected" modifies the word "happening" in the NMA clause like the phrase "sudden and accidental" modifies "discharge" in the ISO clause. "The pollution exclusions thus focus on the polluting event itself or the actual release of pollutants into the environment." *Id.* 79 Cal.Rptr.2d at 378. In contrast, in *Icarom, PLC v. Howard Co.*, 981 F.Supp. 379 (D.Md.1997), the court held that "sudden and unexpected happening during the policy period" means the date of occurrence, not the date of release. The *Icarom* interpretation is more in line with the interpretation of the ISO policy under Michigan law. The ISO policy has been interpreted as focusing on the release of pollutants from a landfill, not the initial discharge into the landfill. April 10, 1998 Opinion (citing *South Macomb*, 225 Mich.App. 635, 572 N.W.2d 686).

---

**6.** As one basis for its claim that the affidavit of Robert Hughes should be stricken, the London Insurers argue that the court cannot look to extrinsic evidence to determine whether the policy language is ambiguous. The Court finds that the language is ambiguous on its face and does not rely on the Hughes affidavit in making this finding.

■ Many courts have expressly held that the NMA clause means the same thing as the ISO clause. In *North Am. Philips Corp. v. Aetna Cas. & Sur. Co.*, 1995 WL 628442 (Del.Sup.Ct. March 10, 1995) (Dow's Exhibit 4), the court broadly held "there is no significant difference between the language contained in the two pollution exclusion exceptions." *Id.* at *4. *Accord Gould, Inc. v. CNA*, 809 F.Supp. 328, 333 (M.D.Pa. 1992) (no meaningful difference between NMA and ISO pollution exclusion clauses); *Olin Corp. v. Insurance Co. of N. Am.*, 762 F.Supp. 548, 563 (S.D.N.Y.1991) (same), *aff'd*, 966 F.2d 718 (2d Cir.1992). *See also E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45 (Del.Sup.Ct.1995) (Dow Exhibit 3) (NMA language "sudden, unintended and unexpected" has identical meaning as ISO language "sudden and accidental").

In addition, the affidavit of Robert Hughes, an insurance industry expert, indicates that the custom and usage in the insurance industry was to utilize the NMA and ISO forms as equivalents. Hughes indicated as follows:

> It has been my experience that the NMA and ISO forms of pollution exclusion have been treated as a matter of custom and practice in the marketplace as functional equivalents. It was also my experience that while London underwriters ordinarily wrote on their own NMA form, they also sometimes utilized the ISO provision in place of the NMA form.... Indeed, it has been the custom and practice in the market to use one or the other exclusion with no change in premium, something that is inconsistent with their providing different coverage.
>
> ... It has been my experience that sometimes some insurers in a single layer will utilize the NMA form while others use the ISO form. Since it is a basic goal of policyholders—well-understood by brokers and insurers—to obtain symmetry, or consistent coverage, within a layer, the use of both exclusions in a single layer is consistent with my opinion that the custom and practice is that the forms are functional

equivalents, and is inconsistent with the notion that they provide different coverage.

Hughes Aff. ¶ 22 & 23.

Further, the London Insurers in this case actually used the clauses interchangeably. While the 1971–71 and the 1978–85 policies use the NMA language, the 1972–77 polices use the ISO language. The London policies used the NMA form before and after they used the ISO form.

Accordingly, the Court finds that the NMA 1685 pollution exclusion should be interpreted identically to the ISO pollution exclusion. Thus, as more specifically explained in the Court's April 10, 1998 Opinion, there is a question of fact whether the pollution exclusion applies at the PPI/Brooklawn site.

### D. Motion to Strike Hughes Affidavit

The London Insurers moved to strike the affidavit of Robert Hughes.[7] The London Insurers argue that the Hughes affidavit should be stricken because his testimony is not relevant or admissible under Federal Rule of Evidence 702; it is not relevant to an interpretation of unambiguous contract language. The essence of the Insurers argument is that the NMA 1685 pollution exclusion is clear and unambiguous and thus extrinsic evidence like the Hughes affidavit is not admissible to vary the clear terms of the contract. Because the Court holds that the NMA 1685 pollution exclusion is ambiguous, the Court may look to extrinsic evidence to determine the intent of the parties, custom, and usage. *Michigan Millers Mut. Ins. Co. v. Bronson Plating Co.*, 197 Mich.App. 482, 494–95, 496 N.W.2d 373, 379 (1992), *aff'd*, 445 Mich. 558, 519 N.W.2d 864 (1994).

■ The Insurers also contend that the affidavit should be stricken because Dow failed to identify Hughes as an expert before December 31, 1997, the deadline set by the Court for filing the reports of experts. Because the London Insurers first raised the issue of the NMA pollution exclusion in their motion for summary judgment and supported their motion with expert testimony, Dow was

7. The London Insurers' motion to strike the Hughes affidavit was joined by the following:

Employers Insurance of Wausau; American Home Assurance Company.

entitled to support its response to the motion with expert testimony. Moreover, the London Insurers have not shown prejudice.

 The London Insurers further argue that 1) an expert may not give an opinion regarding the legal effect of a contract because contract interpretation is a matter of law for the court; and 2) the affidavit lacks a reliable foundation under Federal Rule of Evidence 702 and 703 because it is not based on personal knowledge. The Court does not rely on the affidavit to interpret the law; the Court only relies on the affidavit as evidence of custom and usage. *See* Fed.R.Evid. 704 (opinion testimony is not objectionable merely because it embraces ultimate issue). Further, the facts upon which an expert bases his opinion need not be admissible. An expert can base his opinion upon facts made known to him at or before a hearing. Fed. R.Evid. 703; *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir.1994).

In sum, the Insurers' objections to the Hughes affidavit lack merit. The motion to strike the Hughes affidavit is denied.

### E. Absolute Pollution Exclusion for Releases Into a Body of Water

The London policies from 1971–1972 provide:

This insurance does not cover any liability for:

> (1) Personal Injury or Bodily Injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination resulting from the discharge, dispersal or release, or escape of any substance *into or upon any watercourse or body of water.*

The London Insurers argue that this clause is an unambiguous absolute pollution exclusion which bars coverage for the property damage at the PPI site because the damage there is groundwater contamination.

Dow contends that the phrase "watercourse or body of water" does not include groundwater. Courts are in conflict on this issue. *Compare Lumbermens Mut. Cas. Co. v. Plantation Pipeline Co.*, 214 Ga.App. 23, 447 S.E.2d 89, 91–94 (Ga.App.1994) ("watercourse or body of water" did not apply to groundwater pollution) and *State v. Travelers Indem. Co.*, 508 N.Y.S.2d 698, 701, 120 A.D.2d 251, 254 (1986) (commonly understood interpretation of "body of water" does not include groundwater), *appeal dismissed*, 69 N.Y.2d 900, 507 N.E.2d 1091, 514 N.Y.S.2d 1028 (1987) *with MAPCO Alaska Petroleum v. Central Nat'l Ins. Co. of Omaha*, 795 F.Supp. 941, 945 (D.Ala.1991) (groundwater is watercourse or body of water; relying on *Time Oil Co. v. Cigna Property Ins. Co.*, 743 F.Supp. 1400 (W.D.Wash.1990)).

The best discussion of this issue is set forth in *Lumbermens*, where the court interprets the phrase "body of water" as an aggregate of water having defined boundaries, 447 S.E.2d at 93, and "watercourse" as a running stream of water usually flowing in a particular direction. *Id.* at 93 n. 2. Noting that the phrase was ambiguous and must be interpreted in favor of the insured, the court held that the groundwater at the site in issue was not a watercourse or body of water because it consisted of water that was bound up with the earth, not defined by particular boundaries. The court distinguished the case from those cases holding that of large underground aquifer is a "body of water." *See, e.g., Time Oil Co. v. Cigna Property Ins. Co.*, 743 F.Supp. 1400 (W.D.Wash.1990) ("body of water" included major aquifer). The groundwater at the site in *Lumbermens* was bound up with the earth. It consisted of "either the water held in the small openings between sand grains and clay particles in the soil and saprolite zones or in the small fractures in the underlying bedrock." *Id.* at 93.

 This Court finds the reasoning of *Lumbermens* persuasive. The phrase "watercourse or body of water" is ambiguous and must be interpreted in favor of Dow. Because it is an exclusion clause, the exclusion must be interpreted narrowly. Further, there is no evidence that the groundwater at the PPI/Brooklawn site consisted of a major aquifer with specific boundaries. It was in the nature of the groundwater at the *Lumbermens* site, it was bound up with the earth. Accordingly, interpreting the exclusion strictly, the phrase "watercourse or body of water" does not include the groundwater at the PPI/Brooklawn site. Therefore, paragraph 1

of the pollution exclusion in the London policies from 1971–72 does not bar coverage for groundwater contamination at the PPI/Brooklawn site.[8]

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

The London Insurers' motion for summary judgment based upon the NMA 1685 pollution exclusion clause with respect to the PPI/Brooklawn site is DENIED

The following insurers joined the London Insurers' motion for summary judgment: American Home Assurance Company, Yasuda Fire and Marine Insurance Company of Europe Limited, National Nederlanden, and International Insurance. Therefore, their joinders are also DENIED.

Employers Insurance of Wausau's motion for summary judgment on the NMA 1685 pollution exclusion clause with respect to the Hartley & Hartley and Silresim sites is DENIED AS MOOT.

The London Insurers' motion to strike the affidavit of Robert Hughes is DENIED.

The following insurers joined the London Insurers' motion to strike the affidavit of Robert Hughes: Employers Insurance of Wausau and American Home Assurance Company. Therefore, their joinders are also DENIED.

---

**8.** Dow also contends that the London policies for 1971–72 contain an express "broad as primary" clause which renders the exclusion for discharges upon water ineffective. Because the Court holds that the exclusion of coverage for releases into "any watercourse or body of water" does not include groundwater, the Court does not reach this issue.