**COMERICA BANK, Plaintiff–Appellant,**

v.

**LEXINGTON INSURANCE COMPANY,
Defendant–Appellee.**

No. 92–1576

United States Court of Appeals,
Sixth Circuit.

Argued May 6, 1993.

Decided July 2, 1993.*

---

* This decision was originally issued as an "unpublished decision" filed on July 2, 1993. On August 25, 1993, the court designated the opinion as one recommended for full-text publication.

Eric A. Linden (argued), Susan M. Bakst (briefed), Jaffe, Raitt, Heuer & Weiss, Detroit, MI, for plaintiff-appellant.

Kenneth M. Zorn (argued & briefed), Michael C. McKinnon, Reynolds, Beeby, Magnuson & Kenny, Detroit, MI, for defendant-appellee.

Before: KENNEDY and SILER, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant, Comerica Bank, appeals the district court's grant of summary judgment to defendant-appellee, Lexington Insurance Co., in this diversity insurance contract case.

### I.

This case involves an insurance coverage dispute between plaintiff Comerica and defendant Lexington Insurance Co. On January 1, 1984, Comerica purchased a Trust Department Errors and Omissions Policy issued by Lexington (hereinafter, "the insurance policy"). The policy covered claims made against the bank from January 1, 1984 until January 1, 1987.

The actions taken by the bank's trust department relating to this lawsuit are as follows: On May 6, 1976, C. Carlton Prichard, the sole owner and shareholder of Earl C. Smith, Inc. (hereinafter, "the company"), died testate. His will provided that his employee, Ronald C. Murrell,[1] would have the right of first refusal to purchase all of the capital stock of the company. Detroit Bank & Trust which is now Comerica Bank (hereinafter, "the bank") was appointed executor of Prichard's estate.

The bank recognized the right of first refusal in Mr. Murrell, and in order to establish the fair market value of the Smith company stock, solicited bids. The highest bid ($2,850,000) was received from Paragon Transport, Inc. (hereinafter, "Paragon"). In a letter of November 17, 1976, Detroit Bank & Trust advised Mr. Murrell that he had until December 15, 1976 to purchase the stock for $2,850,000 and Murrell exercised his right of first refusal by tendering a $50,000 deposit.

On January 21, 1977, Murrell notified the executor of the trust that Manufacturer's National Bank, one of the banks from which he had been seeking financing, had rejected his loan application. On January 21, 1977, Paragon increased its offer. On January 24, 1977, Detroit Bank & Trust advised Murrell in writing that his right to consummate the stock purchase had been terminated.

Although not objecting immediately to the termination of his right of first refusal, two days later, on January 26, 1977, Mr. Murrell wrote to the executor of the trust asserting the continued existence of his right to the stock. He continued to assert his right to purchase the stock and made efforts to obtain financing from both Michigan and out-of-state banks. A loan application was already before the Central Loan Committee of Michigan National Bank of Port Huron and was approved on February 2, 1977.

However, in the meantime on January 24, 1977 the bank had accepted the Paragon offer without any condition concerning Mr. Murrell's right of first refusal. On January 28, 1977, Murrell initiated an action in St.

1. This person is also referred to in the briefs as Robert Murrell.

Clair County Probate Court to prevent the sale of the stock to Paragon and to require sale to himself.

On February 28, 1977, the St. Clair County Probate Court ruled that the bank, as executor of the estate, had improperly terminated Murrell's right of first refusal and issued a preliminary injunction, enjoining the sale of stock to anyone other than Murrell.[2] On March 10, 1977, the bank entered into an agreement concerning the sale of the stock to Murrell. At this point, the bank had entered into two legally enforceable contracts for the sale of the same stock with two different parties—Murrell and Paragon.

On July 27, 1977, Paragon filed suit in the St. Clair County Circuit Court against Detroit Bank & Trust as executor of the estate of C. Carlton Prichard. The complaint alleged that the bank had breached its contract to sell the stock to Paragon and sought specific performance or money damages. The litigation was stayed pending the appeal of the St. Clair County Probate Court injunction prohibiting the sale of the stock to anyone but Murrell. After the 1981 Michigan Supreme Court decision, ordering the sale of the stock to Murrell, Paragon's action for breach of contract proceeded to trial. Ultimately, a judgment of approximately $2,700,000 against the bank as executor of the estate was entered in July 1986. After Paragon had been awarded over 2.7 million in money damages in its action against the estate for Comerica's breach of its contract to sell the Smith company stock to Paragon, there was approximately only $600,000 left in the estate to satisfy the judgment.

On October 10, 1986, the beneficiaries of the Prichard estate filed a petition in St. Clair County Probate Court to surcharge and remove the bank as executor of the estate due to alleged mishandling of the estate. The petition alleged that the bank acted

wrongfully in accepting the offer of Paragon to purchase the Smith company stock while Murrell's right of first refusal was in effect. It also alleged that as a result of the actions of the bank, the estate was embroiled in litigation instituted by Murrell and Paragon.[3] The petition demanded surcharge against Comerica of all judgments, legal fees, and expert witness fees resulting from the litigation, and all executor fees paid by the estate to Comerica.

In 1984, plaintiff Comerica had acquired a Trust Department Errors and Omissions Policy from defendant Lexington Insurance Company. As required by the terms of the policy, Comerica notified Lexington of the surcharge action as soon as it became aware of the asserted claims. Lexington refused to defend or indemnify Comerica in this action, taking the position that certain exclusions in the insurance policy barred coverage.

In September 1990, Comerica settled the surcharge action with the beneficiaries of the Prichard estate, and in a settlement agreement agreed to defend and indemnify the beneficiaries against certain other claims which might be brought. Pursuant to the insurance policy, Comerica then demanded payment from Lexington both for the amount it contributed towards the settlement and for attorneys' fees incurred in defending the surcharge action. It also demanded that Lexington honor the settlement indemnification provision. Lexington refused to honor these demands.

On September 11, 1990, Comerica filed a complaint in the United States District Court for the Eastern District of Michigan, seeking damages in the amount Comerica had paid pursuant to its settlement agreement with the beneficiaries ($1,200,000), all defense costs associated with the surcharge action ($29,000), and a declaratory judgment requiring Lexington to defend and indemnify the

2. The St. Clair County Circuit Court affirmed. Two years later in 1979, the Michigan Court of Appeals reversed this decision. But in March 1981, the Michigan Supreme Court reversed the Court of Appeals and held that Detroit Bank & Trust had acted unreasonably on January 24, 1977, when it terminated Murrell's right of first refusal. *In re Prichard Estate,* 410 Mich. 587, 302 N.W.2d 554 (1981).

3. In August 1979, Murrell had instituted suit against Paragon for tortious interference with contract. Then, in 1981 Paragon brought in the estate as a third party defendant. This action was also stayed until after the Michigan Supreme Court ruling. After winning the right to buy the company, Murrell dismissed this complaint.

estate's beneficiaries in accordance with the settlement agreement. On April 2, 1992, the district court granted defendant's motion for summary judgment. This timely appeal followed.

## II.

In the present case, the district court ruled that the exclusionary language in the insurance policy exempted defendant from providing insurance for the litigation at issue. The court held that summary judgment should be granted to defendant because defendant's interpretation of the exclusionary language of the policy was the only reasonable interpretation and the policy was not susceptible to two different interpretations.

A motion for summary judgment under Fed.R.Civ.P. 56 may be granted if there is no genuine issue of material fact that remains to be decided and the moving party is entitled to judgment as a matter of law. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905 (6th Cir.1982); *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1985). Under Michigan law, which governs this diversity action, the rules for construction of an insurance contract are the same as for any other written contract. *Hall v. Equitable Life Assurance Society*, 295 Mich. 404, 295 N.W. 204 (1940). Policy language in an insurance contract is to be given its ordinary meaning unless it is apparent from a reading of the whole instrument that a different or special meaning was intended. *Sump v. St. Paul Fire & Marine Ins. Co.*, 21 Mich.App. 160, 175 N.W.2d 44 (1970); *Ford Motor Credit Co. v. Aetna Casualty & Surety Co.*, 717 F.2d 959 (6th Cir.1983). If the insurance contract is deemed ambiguous .and susceptible to two different interpretations, the interpretation that is most favorable to the insured must be adopted. *Century Boat Co. v. Midland Ins. Co.*, 604 F.Supp. 472 (W.D.Mich.1985). An insurance policy is ambiguous if it is susceptible to two different reasonable interpretations. *Arrigo's Fleet Service, Inc. v. Aetna Life and Casualty Co.*, 54 Mich.App. 482, 221 N.W.2d 206 (1974).

## III.

Plaintiff Comerica contends that the district court improperly granted defendant's motion for summary judgment because the exclusionary language of Endorsement II of the policy is ambiguous and does not bar coverage of the surcharge action brought by the beneficiaries of the estate against the bank in 1986.

The insuring agreement at issue provided coverage to Comerica from January 1, 1984 to January 1, 1987, for $10,000,000 with a $100,000 deductible, for wrongful acts resulting:

> from the rendering of or failure to render services solely in the Insured's capacity as: ... [e]xecutor or administrator of estates. . . .

The insuring agreement required that the claim be made against Comerica during the policy period, that the claim be reported to the insurance company during the policy period, and that the wrongful act occur during the policy period. The policy also included an exclusion contained in Endorsement II, which provides:

> In consideration of the premium charged, it is understood and agreed that this policy excludes all claims arising from all pending and/or prior litigation as well as all future claims arising out of said pending and/or prior litigations.

In regard to Endorsement II, the district court made the following statement in its oral opinion of April 2, 1992:

> The court finds in terms of this particular matter using the standards that I must, No. 1 standard that summary judgment should be entered if the evidence is such that a reasonable factfinder could not find for the non-moving party using also as a standard that it's the duty of the court, not the jury, to construe written contracts and to define what is and what is not within their terms and using also that I have to take into consideration that the language should be looked at in the light most favorable to the insured, so taking all of those kinds of standards into consideration, the court believes in this particular matter as to Endorsement No. 2 that there was a

pending or prior litigation as, and as these future claims, they related to that, and that it could be no other conclusion.

Plaintiff argues that it is implicit from this statement that the district court found that the language of Endorsement II was ambiguous, because there would be no need to construe the language of the Endorsement in plaintiff's favor unless the language was ambiguous. Plaintiff argues that once a court determines that a policy is ambiguous, it must interpret it in favor of the insured.

■ This argument is flawed. Contrary to plaintiff's contention, the district court did not state that the language of Endorsement II was ambiguous. The court was, in essence, saying that even when it attempted to give the policy the interpretation that plaintiff wished (which the court was obligated to do under the summary judgment standard), the court was unable to find that plaintiff's interpretation of the policy language was a reasonable interpretation. The record indicates that the court found that because the exclusionary language of Endorsement II was clear and defendant's interpretation was the only reasonable interpretation, summary judgment in favor of defendant was proper.

Plaintiff argues that the language of Endorsement II is ambiguous and must be construed in its favor based on the following reasoning. Plaintiff claims that Endorsement II only applies to claims arising from prior suits against the "applicant" for the insurance policy, which is Comerica in its corporate capacity. Plaintiff argues that the insurance policy provides coverage only for claims in which Comerica is subject to corporate liability based on its trust department's actions, and that the only relevant "claims arising from all pending and/or prior litigation" for the purposes of the exclusionary language of Endorsement II must be those in which Comerica is subject to personal, as opposed to representative, exposure. Plaintiff argues that Paragon's 1977 suit was not against the bank in its corporate capacity. Therefore, according to plaintiff, the Paragon suit is not "prior litigation," within the meaning of Endorsement II, and claims arising from it are not excluded by the language of Endorsement II.

We find this argument to be flawed. The policy states that it provides coverage for wrongful acts resulting "from the rendering of or failure to render services solely in the Insured's capacity as: ... [e]xecutor or administrator of estates...." The language of Endorsement II plainly indicates that claims arising from pending and/or prior litigation are excluded. The only sensible reading of the policy as a whole is that the litigation concern acts resulting from "the rendering of or failure to render services ... in the Insured's capacity as ... [e]xecutor or administrator of estates." The distinction which plaintiff seeks to make between the bank in its corporate capacity and the bank in its representative capacity is not found anywhere in the terms of the policy. Plaintiff's limiting definition of the term "applicant" for insurance to the bank in its corporate capacity does not make sense when viewed in the context of the coverage afforded by the insuring agreement as a whole.

Moreover, it is clear from the record that plaintiff did not make such a distinction when purchasing the policy. Question 19 of the application requests a list of suits involving the trust department, which will be subject to the exclusion in Endorsement II. In response to this question, the bank attached a separate document titled, "Claims History," which identified "pending lawsuits against Comerica." Litigation involving the Prichard estate was one of the lawsuits identified. This list included not only the Prichard estate litigation, but four other cases involving actions against the bank arising from its conduct in a representative capacity as executor of an estate.

■ After listing the Prichard estate litigation in response to Question 19 as pending litigation subject to the exclusionary language of Endorsement II, the bank now attempts to rewrite the language of Endorsement II seeking to add a distinction between Comerica in its corporate capacity and Comerica in its representative capacity. However, this distinction is contrary to the general principles and rules of contract construction. The contract language will be given its ordinary and plain meaning, rather than a techni-

cal or strained construction. *Jones v. Farm Bureau Mutual Ins. Co.,* 172 Mich.App. 24, 431 N.W.2d 242 (1988); *P.L. Kanter Agency, Inc. v. Continental Casualty Co.,* 541 F.2d 519 (6th Cir.1976). Under Michigan law, "the office of interpretation or construction is to ascertain the intention of the parties *from the words which have been used; [The court is] not at liberty to insert words* which have been omitted, and which are not to be found in the instrument." *Washington County Bank v. Jerome,* 8 Mich. 490, 491 (1860) (emphasis added). In the present case, the district court correctly refused to insert the distinction between corporate and representative capacity which plaintiff was advocating, because the distinction was not to be found anywhere in the insurance policy.

█ Furthermore, the district court was within its discretion to take judicial notice of the dictionary definition of the word "arising." *Poland v. Martin,* 761 F.2d 546 (9th Cir.1985). The word arise is defined to mean "to come into being; to begin; to originate." Webster's New Universal Unabridged Dictionary, Second Ed. (1983). In the present case, it is clear that the beneficiaries' 1986 surcharge action against the bank arose directly from the litigation instituted by Paragon against the estate in 1977 and instituted by Murrell against Paragon in 1979 in which the bank was brought in as a third party defendant in 1981. The insurance policy was purchased in 1984 and under Endorsement II, the 1986 claim arising from prior litigation instigated in 1977 and 1979 was excluded from coverage. The Endorsement clearly exempted defendant Lexington from providing insurance coverage for the surcharge action brought by the estate's beneficiaries in 1986, because the surcharge action arose from "pending and/or prior litigation" initiated against plaintiff Comerica in 1977 and 1981.

For these reasons, the district court is affirmed in regard to Endorsement II.

## IV.

█ Plaintiff also contends that the district court improperly granted defendant's motion for summary judgment because the exclusionary language of Endorsement I of the policy did not bar coverage for the 1986 surcharge action by the beneficiaries of the estate against the bank.

Endorsement I provides that there is no coverage:

for Wrongful Acts committed prior to January 1, 1984 if the Insured or any person for whose action the Insured is legally responsible, knew or could have reasonably foreseen prior to January 1, 1984 that such Wrongful Acts would result in a claim or suit against the insured.

Plaintiff argues that the exclusionary language of Endorsement I does not apply to the 1986 surcharge action because it was not reasonably foreseeable prior to January 1, 1984 (when the insurance coverage began) that the prior litigation involving Paragon's suit against the bank for breach of contract would eventually result in a claim against the bank by the beneficiaries. Plaintiff argues that the beneficiaries never voiced a single objection to the bank's handling of the estate between 1976 and December 1985 and that by their silence, they implicitly voiced their approval of the bank's actions. Plaintiff maintains that the bank's first inkling of dissatisfaction came in December 1985 when the beneficiaries objected to an annual accounting, and that before this time, it was not reasonably foreseeable that the beneficiaries would sue in regard to wrongful acts committed prior to January 1, 1984.

Defendant argues that under Michigan law, the bank breached its duty of reasonable care in the administration of the estate when it sold the Smith company stock to two different parties in 1977, *In re Tolfree's Estate,* 347 Mich. 272, 79 N.W.2d 629 (1956), and the bank cannot satisfactorily explain why it could not have reasonably foreseen as far back as 1977 that the wrongful acts committed in its mishandling of the estate would ultimately result in a claim being filed against the bank by the beneficiaries of the estate.

We agree. The bank first became involved in Prichard estate litigation in July of 1977, when it was sued in its representative capacity for breach of contract by Paragon. The bank hired outside counsel to represent the

estate and thereafter directed their activity and monitored the progress of the litigation. In 1981, the Michigan Supreme Court held that the bank's conduct in its handling of the sale of the Smith company stock was "unreasonable." It is clear that the acts of the bank in 1977 in agreeing to sell the Smith company stock to both Paragon and Murrell were the acts which gave rise to all future litigation. We believe that no reasonable juror could find that Comerica could not have reasonably foreseen that at some point in the future it would be subject to suit by the beneficiaries for this misconduct.

Moreover, there is evidence in the record indicating that the bank was concerned as far back as 1982 about its possible liability to the beneficiaries of the estate in a surcharge action. In January 1982, after the bank reached a final sale agreement with Murrell, it negotiated an indemnification agreement with Murrell to hold it harmless "in its corporate capacity" as executor of the estate of C. Carlton Prichard. Further, the bank entered into an agreement with Murrell that he would "not participate in a surcharge action," indicating that the bank was concerned about and was trying to guard against a surcharge action by Murrell, one of the estate's beneficiaries. Moreover, a memo dated April 15, 1981, indicates that one of the attorneys Comerica hired to handle the Prichard/Paragon action discussed the probability of a surcharge action by the estate's beneficiaries, and demonstrates the bank's knowledge, prior to its purchase of the insurance policy in 1984, of this possibility.

Finally, defendant argues that there were a series of wrongful acts that occurred both before and after the inception date of the policy, and that Endorsement I would only exclude the claims concerning wrongful acts committed prior to 1984. Plaintiff fails to take into account the language of Endorsement II, which excludes coverage for claims arising from prior litigation. Because the bank was involved in prior litigation involving the wrongful acts it committed prior to 1984, any claims *arising from* the prior litigation would also be excluded.

As the district court emphasized, the Michigan Supreme Court ruled in a published opinion in 1981 that the bank had acted unreasonably as the executor of the Prichard estate in affording no prior notice of the termination of Murrell's right of first refusal and agreeing to sell the stock to Paragon. It was reasonably foreseeable that this negligence would ultimately lead to a surcharge action by the beneficiaries of the estate if the assets of the estate were depleted by lawsuits arising out of the bank's error in entering into two legally enforceable contracts to sell the same stock to two different parties. For this reason, the language of Endorsement I excludes coverage for the 1986 surcharge action. The bank's wrongful acts committed in 1977 foreseeably resulted in a claim by the beneficiaries against the bank in 1986. The district court is affirmed on this issue.

To conclude, the decision of the district court is hereby AFFIRMED.